# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **USTAAD SYSTEMS, INC.,** | : | **CIVIL ACTION NO. 1:09-CV-1149** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **iCAP INTERNATIONAL CORP.** <br> **t/b/d/a CAP COMPUTER** <br> **CONSULTANTS, INC. and CARLOS** <br> **AGUADO,** | : | |
| **Defendants** | : | |

## **MEMORANDUM**

This is a diversity action sounding in breach of contract, unjust enrichment, intentional interference with contractual relations, alter ego liability, and civil conspiracy, filed by plaintiff USTAAD Systems, Incorporated ("USTAAD"). USTAAD claims that defendant Cap Computer Consultants, Incorporated ("CCC") and its president and sole shareholder, defendant Carlos Aguado ("Aguado"), breached the terms of a contract and improperly recouped monies to which USTAAD is entitled. Presently before the court is a motion to dismiss three of the complaint's six counts for failure to state a claim upon which relief may be granted. (See Doc. 3.) For the reasons that follow, the motion will be granted in part and denied in part.

**I.	Statement of Facts**[1]

USTAAD is a technology company that owns proprietary software known as the "Rigel Software System" ("Rigel"). (Doc. 1, Ex. A ¶ 7.) On September 28, 2004, USTAAD entered into an exclusive agreement with Branch Electric ("Branch"),[2] wherein Branch obtained a license to use Rigel and USTAAD contracted to provide maintenance, customer support, and enhancement services for the software. (Id. ¶¶ 11-12, 20.) Around the same time, USTAAD entered into a contract with CCC wherein CCC agreed to assume USTAAD's obligation to provide customer support, maintenance, and software modification services to Branch under the USTAAD-Branch licensing agreement. (Id. ¶¶ 16-17, 23.) According to the complaint, customer support and maintenance fees due under the USTAAD-Branch contract remained payable to USTAAD, and the services performed by CCC were completed on USTAAD's behalf.[3] (See id. ¶¶ 22-23.)

In or about August of 2007, USTAAD allegedly discovered that CCC was collecting fees from Branch in exchange for its software support services. (Id. ¶ 26.) USTAAD contends that such an arrangement violated its agreement with CCC.

---

[1] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the complaint. See infra Part II. However, those portions of the complaint which consist of no more than legal conclusions or a formulaic recitation of the elements of a cause of action have been disregarded. Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009).

[2] Branch is a wholly owned division of Rexel, Incorporated. (Doc. 1, Ex. A ¶ 11.)

[3] The agreements are attached as Exhibits A-C to the complaint.

2

Accordingly, on May 20, 2009, USTAAD filed a complaint in the York County Court of Common Pleas, asserting, *inter alia*, that "CCC and [Aguado] . . . engaged in a course of conduct calculated to advance their own economic and business interests to the detriment of USTAAD." (Id. ¶ 25.) CCC and Aguado removed the action to federal court on June 17, 2009. (Doc. 1.)

The complaint contains a total of six separate counts accusing CCC of breach of contract, and CCC and Aguado of unjust enrichment, intentional interference with contractual relations, and of engaging in a civil conspiracy to appropriate profits belonging to USTAAD. In addition, USTAAD characterizes CCC as an alter ego of Aguado and therefore seeks to pierce CCC's corporate veil and to hold its shareholders—namely, Aguado—personally liable for CCC's corporate conduct. On June 22, 2009, CCC and Aguado filed a motion to dismiss three of the complaint's six counts for failure to state a claim upon which relief may be granted. (See Doc. 3.) The motion has been fully briefed and is now ripe for disposition.

**II.     Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County

of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a two-step inquiry. In the first step, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009) (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, --- U.S. at ---, 129 S. Ct. at 1949. When the

4

complaint fails to establish defendant liability, however, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

**III.    Discussion**[4]

The instant motion seeks dismissal of three of the complaint's six counts. Specifically, CCC and Aguado have moved to dismiss (1) Count Three, which purports to state a claim against Aguado for unjust enrichment; (2) Count Five, which characterizes CCC as a "mere[] alter ego of Aguado" and seeks to pierce CCC's corporate veil; and (3) Count Six, which alleges that CCC and Aguado engaged in a civil conspiracy to appropriate rights and profits belonging to USTAAD. The court will first address USTAAD's allegation of alter ego liability before considering its claims for unjust enrichment and civil conspiracy.

**A.    Alter Ego Liability**

In Pennsylvania, "the general rule is that a corporation shall be regarded as an independent entity even if its stock is owned entirely by one person." Lumax Indus. v. Aultman, 669 A.2d 893, 895 (Pa. 1995). Courts may set aside this general

---

[4] Jurisdiction over the instant action is based on diversity of citizenship, see 28 U.S.C. § 1332, which in this case requires the court to apply Pennsylvania law to the parties' substantive claims. See Norfolk S. Ry. Co. v. Basell USA, Inc., 512 F.3d 86, 91-92 (3d Cir. 2008). Neither party disputes the application of Pennsylvania state law to this matter. Accordingly, decisions of the Pennsylvania Supreme Court are binding precedent upon this court, while Pennsylvania Superior Court decisions will be treated as persuasive precedent. See State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 107 n.2 (3d Cir. 2009).

5

rule "only in limited circumstances when the [corporate] form is used to defeat public convenience, justify wrong, protect fraud or defend crime." Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 353 (3d Cir. 2001) (quoting Kiehl v. Action Mfg. Co., 535 A.2d 571, 574 (Pa. 1987)); see also Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk, 332 F.3d 188, 193 n.6 (3d Cir. 2003) (explaining that "piercing the corporate veil is not technically a mechanism for imposing 'legal' liability, but for remedying the fundamental unfairness [that] will result from a failure to disregard the corporate form" (internal quotations omitted)). In such situations, a party may be permitted to pierce the corporate veil and impose liability upon the corporation's shareholders. Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 171 (3d Cir. 2002). However, a litigant seeking this remedy must overcome an exacting inquiry, for there is a strong presumption against disregarding the corporate form. Lumax, 669 A.2d at 895; Wedner v. Unemployment Bd., 296 A.2d 792, 794 (Pa. 1972).

To pierce the corporate veil, one must demonstrate "that a corporation's affairs and personnel were manipulated to such an extent that it became nothing more than a sham used to disguise the alter ego's use of its assets for his own benefits in fraud of its creditors." Kaplan v. MK Invs., Inc., 19 F.3d 1503, 1521 (3d Cir. 1994). Circumstances which typically permit veil-piercing include, *inter alia*, the following:

> The failure to observe corporate formalities; non-payment of dividends; insolvency of debtor corporation; siphoning the funds from corporation by dominant shareholders; non-functioning of other officers and

6

> directors; absence of corporate records; whether the corporation is a mere facade for the operations of a common shareholder or shareholders; and gross undercapitalization.

E. Minerals & Chems. Co. v. Mahan, 225 F.3d 330, 333 n.7 (3d Cir. 2000) (quoting Wheeling-Pittsburgh Steel Corp. v. Intersteel, Inc., 758 F. Supp. 1054, 1059 (W.D. Pa. 1990)). In sum, a plaintiff requesting alter ego liability must demonstrate "that the corporation's owners abused the legal separation of a corporation from its owners and used the corporation for illegitimate purposes." Kaplan, 19 F.3d at 1521. The proof necessary to impose alter ego liability must be clear and convincing. Lutyk, 332 F.3d at 194.

In the instant matter, USTAAD's complaint fails to meet the exacting standard required to pierce the corporate veil under Pennsylvania law. It is devoid of factual allegations which suggest that CCC failed to observe corporate formalities or pay dividends, that it is insolvent, or that Aguado inappropriately siphoned its funds. Furthermore, no facts are pled which might show that CCC was a sham, that it did not maintain corporate records, or that it is grossly undercapitalized. Instead of pleading such facts, USTAAD flatly asserts that CCC is "under the control and domination of Aguado" and that it "fails to maintain its own corporate independence" from Aguado. (See Doc. 1, Ex. A ¶¶ 54-55.) These conclusory assertions, unsupported by allegations of fact, do nothing to further USTAAD's claim and have been disregarded by the court. See Iqbal, --- U.S. at ---, 129 S. Ct. at 1950 (explaining that a court must disregard claims which consist of no more than legal conclusions, for they are "not entitled to the assumption of truth").

7

USTAAD attempts to salvage its claim by pointing to the software support contract it entered with CCC in 2004. According to USTAAD, it is significant that Aguado signed this agreement on behalf of CCC and in his individual capacity. USTAAD argues that "[t]his fact alone illustrates how casually Aguado distinguishes between his own acts and acts taken by the corporation[.]" (Doc. 10 at 11.) The court disagrees. Aguado is the sole owner of CCC and therefore it is not surprising that his signature appears on company contracts. Although his sole ownership status is certainly relevant to the veil-piercing inquiry, it is not sufficient—without some additional factual allegations—to impose alter ego liability.[5] See Lumax, 669 A.2d at 895 (explaining that alter ego liability is typically not imposed simply because a single individual owns the entire company). Accordingly, the motion to dismiss this count will be granted. The court will, however, permit USTAAD to seek leave to amend its complaint in order to address the above-described deficiencies.

---

[5] USTAAD argues that the court should deny the motion to dismiss because "[d]iscovery of information that is currently within the sole control of the Defendants will confirm the underlying allegations of the Complaint." (Doc. 10 at 12.) To obtain such discovery, however, USTAAD's claim must possess facial plausibility. See Iqbal, --- U.S. at ---, 129 S. Ct. at 1949 (explaining that a claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). In its current form, USTAAD's claim for alter ego liability is premised on a single, rather innocuous fact: that Aguado signed the 2004 software support agreement. Under Pennsylvania law—and federal pleading standards—this claim is simply too speculative to proceed. See Phillips, 515 F.3d at 234 (stating that the allegations "must be enough to raise a right to relief above the speculative level" (quoting Twombly, 550 U.S. at 555)).

### B. Unjust Enrichment

Count Three of the complaint contends that Aguado was unjustly enriched when he appreciated benefits he received from CCC as a result of CCC's alleged breach of contract. (See Doc. 1, Ex. A. ¶ 45.) Specifically, USTAAD avers that CCC accepted payments directly from Branch and that Aguado had knowledge of these transactions. The complaint does not specify how Aguado participated in the purported misconduct, but USTAAD argues that he is subject to personal liability because he "exclusively controls all aspects of CCC [and] it can reasonably be inferred that Aguado, himself, participated in orchestrating the arrangements between Branch and CCC."[6] (Doc. 10 at 13.)

---

[6] The 2004 software services agreement at issue herein states that it is an agreement between CCC, Aguado, and USTAAD. (See Doc. 1, Ex. A.) Aguado's signature appears on this document, but all rights, duties, and obligations under the agreement exclusively flow between CCC and USTAAD. The terms of the agreement do not provide Aguado with any rights in his individual capacity, nor is he burdened with any responsibilities stemming from the contract. Absent some exchange of benefit and/or detriment between Aguado and USTAAD, the contract between these two parties is not supported by valid consideration and there simply is no express contract between them. See Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002) (explaining that a valid contract requires consideration and that consideration "confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise" (quoting Channel Home Ctrs. v. Grossman, 795 F.2d 291, 299 (3d Cir. 1986))). By pursuing a quasi-contract claim against Aguado, USTAAD implicitly concedes that no express contract exists between it and Aguado and, by extension, that Aguado did not breach the terms of an express contract. See Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc., 832 A.2d 501, 507 (Pa. Super. Ct. 2003) (holding that a quasi-contract action is appropriate only when there is no express contract between the parties).

Under Pennsylvania law, "when there is no express contract between the parties, a plaintiff may still recover under a quasi-contract theory" such as a theory of unjust enrichment. Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc., 832 A.2d 501, 507 (Pa. Super. Ct. 2003); see also Ne. Fence & Iron Works, Inc. v. Murphy Quigley Co., 933 A.2d 664, 667 (Pa. Super. Ct. 2007) (stating that a quasi-contract claim may lie when one party is unjustly enriched at another party's expense). To make out a claim for unjust enrichment, a plaintiff must establish three elements: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008) (citing Limbach Co. LLC v. City of Phila., 905 A.2d 567, 575 (Pa. Commw. Ct. 2006). Pennsylvania tribunals consider the third element of the doctrine—whether enrichment of the defendant is unjust—to be the inquiry's principal focus. See AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. Ct. 2001).

When benefits are improperly conferred upon a corporate entity, its officers are typically liable only if it can be shown that the officer in question actually participated in the misconduct. See Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983); Parker Oil Co. v. Mico Petro & Heating Oil, LLC, 979 A.2d 854, 856 (Pa. Super. Ct. 2009) (explaining that under the "participation theory," a corporate officer may be held liable "for a business debt where that person participates in

tortious conduct that led to the liability"). In other words, a corporate officer is not subject to liability for corporate misconduct merely because he or she is an officer of the corporation. See Loeffler v. McShane, 539 A.2d 876, 878-79 (Pa. Super. Ct. 1988) (distinguishing between an officer's misfeasance, which is actionable, and nonfeasance, for which no liability may lie). Rather, Pennsylvania courts require active, personal participation in the events in question. See Shay v. Flight C Helicopter Servs., Inc., 822 A.2d 1, 17-20 (Pa. Super. Ct. 2003) (surveying cases in which liability is imposed and contrasting with cases in which no liability is imposed).

USTAAD alleges that Aguado controls and manages the operations of CCC and that CCC began to collect fees directly from Branch despite Aguado's knowledge of the exclusive agreement between Branch and USTAAD. (See Doc. 1, Ex. A ¶ 26, 54.) In addition, USTAAD claims that Aguado negotiated the 2004 software services agreement. Construing these allegations in the light most favorable to USTAAD, the court can reasonably infer that Aguado actively participated in the alleged misconduct attributed to CCC. Thus, the court finds these that USTAAD has sufficiently stated a claim for unjust enrichment under Pennsylvania law. See, e.g., Loeffler, 539 A.2d 876 (finding active participation when officer personally authorized payment in question); Bank of Landisburg v. Burruss, 524 A.2d 896 (Pa. Super. Ct. 1987) (finding active participation when bank president negotiated deal, arranged for delivery of goods, and neglected to arrange alternate financing). The motion to dismiss this claim will therefore be denied.

## C. Civil Conspiracy

The final count before the court is Count Six, a claim for civil conspiracy. USTAAD pleads this cause of action in the alternative, asserting that if "CCC is not the alter ego of Aguado . . . , USTAAD alleges that CCC conspired with Aguado to engage in a civil conspiracy" to "appropriate rights and profits belonging to USTAAD." (Doc. 1, Ex. A ¶¶ 59-60.) Under Pennsylvania law, a cognizable civil conspiracy claim consists of the following elements: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) (quoting Strickland v. Univ. of Scranton, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997)). According to the "intracorporate conspiracy doctrine," however, "an entity cannot conspire with one who acts as its agent." Id.; see also Rife v. Borough of Dauphin, 625 F. Supp. 2d 212, 221-22 (M.D. Pa. 2008) (same). Thus, an agent that acts entirely within the scope of his or her employment or agency may not, as a matter of law, conspire with his or her employer or principal. See Gen. Refractories, 337 F.3d at 313; Heffernan v. Hunter, 189 F.3d 405, 412-13 (3d Cir. 1999).

Nowhere in the complaint does USTAAD allege that Aguado acted outside the scope of his employment or corporate agency. The complaint simply avers that Aguado controls and is the sole owner of CCC, and that Aguado knew about the

exclusive agreement entered between Branch and USTAAD.[7] (See Doc. 1, Ex. A ¶¶ 5, 26, 54, 60.) These contentions are insufficient to show that Aguado was acting in a personal capacity. See Gen. Refractories, 337 F.3d at 313 (requiring pleading to allege facts showing defendant was acting in a personal, as opposed to official, capacity). The court will thus grant the motion to dismiss the civil conspiracy claim, but will permit USTAAD to seek leave to amend the complaint in order to rectify the deficiencies identified herein.

---

[7] USTAAD also alleges that "Aguado and CCC engaged in a common plan and scheme to appropriate rights and profits belonging to USTAAD." (Doc. 1, Ex. A ¶ 60.) This formulaic recitation of the elements of the cause of action has been disregarded. See Iqbal, --- U.S. ---, 129 S. Ct. at 1949.

13

## IV. Conclusion

For the foregoing reasons, the court will dismiss Counts Three, Five, and Six of the complaint. USTAAD's pleading does not contain sufficient factual allegations to support its contention that Aguado was unjustly enriched, that CCC is the alter ego of Aguado, or that Aguado and CCC engaged in a civil conspiracy to defraud USTAAD.

An appropriate order follows.

                                              S/ Christopher C. Conner
                                            CHRISTOPHER C. CONNER
                                            United States District Judge

Dated:       July 16, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **USTAAD SYSTEMS, INC.,** | : | **CIVIL ACTION NO. 1:09-CV-1149** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **iCAP INTERNATIONAL CORP. t/b/d/a CAP COMPUTER CONSULTANTS, INC. and CARLOS AGUADO,** | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 16th day of July, 2010, upon consideration of the motion (Doc. 3) to dismiss, filed by defendants iCAP International Corporation t/b/d/a Cap Computer Consultants, Incorporated and Carlos Aguado, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion (Doc. 3) to dismiss is GRANTED in part and DENIED in part as follows:

    a. The motion is GRANTED with respect to Counts Five and Six.

    b. The motion is DENIED in all other respects.

2. Plaintiff USTAAD Systems, Incorporated shall be permitted to seek leave to file an amended complaint on or before August 9, 2010. Any motion filed pursuant to this Paragraph shall comply with Local Rule 15.1 or be stricken as improperly filed.

          S/ Christopher C. Conner
          CHRISTOPHER C. CONNER
          United States District Judge